# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| In re: | Case No. 24-24588 |
|---|---|
| COLTON PAULHUS, | Chapter 7 |
| Debtor. | |
| ------------------------------- | ---------------------------------- |
| STEVEN SONZA, | Adv. Proc. No. _____ |
| Plaintiff, | |
| v. | COMPLAINT TO DETERMINE |
| DISCHARGEABILITY OF DEBT | |
| COLTON PAULHUS, | |
| Defendant. | |

# COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2), (4), AND (6)

COMES NOW Plaintiff MAJ Steven Sonza (RET), a creditor and pro se litigant in the above-captioned case, hereby files this Complaint to Determine Dischargeability of Debt against Defendant Colton Paulhus, and in support thereof, respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This adversary proceeding is commenced pursuant to 11 U.S.C. § 523, Federal Rule of Bankruptcy Procedure 7001(6), and Local Bankruptcy Rule 7001-1.

## PARTIES

5. Plaintiff MAJ Steven Sonza (RET) ("Plaintiff" or "Sonza") is an individual residing at 7200 Roxanne Ln, Rohnert Park, CA 94928. Plaintiff is a 100% service-connected disabled veteran with documented post-traumatic stress disorder (PTSD), Major Depressive Disorder, and Agoraphobia with Panic Disorder, which significantly impair his ability to process complex information, maintain focus, and make financial decisions.

6. Defendant Colton Paulhus ("Defendant" or "Paulhus") is the debtor in the above-captioned Chapter 7 bankruptcy case. Upon information and belief, Defendant resides at PO Box 15017, Tumwater, WA 98511.

7. Defendant was a Member and Chief Executive Officer of Anchored Tiny Homes, LLC ("ATH"), a Wyoming limited liability company that conducted business in California.

8. Defendant Colton Paulhus operated ATH alongside his brother, Austin James Paulhus, who has separately filed for Chapter 7 bankruptcy in this Court (Case No. 24-24383), and his father, Scott Francis Paulhus.

## FACTUAL BACKGROUND

9. ATH was a contractor operating in California under Contractor License No. 1078940, which has since been revoked by the California Contractors State License Board ("CSLB") effective November 8, 2024 (CSLB Case No. N2024-140).

10. ATH, through Defendant and his family members, purportedly designed, built, and installed custom tiny homes and accessory dwelling units ("ADUs").

11. On December 18, 2023, Plaintiff entered into a contract with ATH for the construction of a 1000 sq. ft. custom ADU at Plaintiff's property located at 7200 Roxanne Ln, Rohnert Park, CA 94928, for $336,700. Key contract terms included:
    - Work to begin within 30 days of loan closing and be completed within 180 days (by August 25, 2024)
    - Contractor responsible for all labor, materials, permits, and compliance with laws
    - Time explicitly stated as "of the essence," with strict deadlines
    - Payments to be phased based on work completion

12. On or about March 21, 2024, ATH initiated a series of unauthorized ACH transactions from Plaintiff's bank account, withdrawing a total of $315,700 for supposed construction services. These transactions were executed without Plaintiff's authorization or consent and were intentionally broken into three separate withdrawals on the same day: $100,000, $100,000, and $115,700.

13. These unauthorized withdrawals were preceded by ATH presenting Plaintiff with a "draw request form" for $56,284.66 on March 6, 2024, which contained demonstrably fraudulent pricing significantly below market rates, including:

- Painting priced at $163.97 (market rate: $2,000-$5,000)
- Kitchen cabinets and countertops priced at $612.50 (market rate: $10,000-$20,000)
- Flooring and tile priced at $376.25 (market rate: $2,500-$7,500)
- Bathroom fixtures priced at $556.50 (market rate: $5,000-$10,000)

14. ATH falsely certified that all listed work had been "duly completed in a good and workmanlike manner," when in fact minimal to no actual construction had been performed.

15. On March 19, 2024, just prior to the unauthorized withdrawals, ATH sent Plaintiff an invoice (#3795) for the "Full Contract Amount" of $285,195.00, marked as "PAID IN FULL," despite only preliminary design work having been completed.

16. After the unauthorized withdrawals, ATH performed no substantial work for Plaintiff, delivered no materials to Plaintiff, and provided no services of value to Plaintiff.

17. Upon discovery of the unauthorized withdrawals, Plaintiff attempted to contact ATH and the Defendant multiple times to resolve the issue and obtain a refund but received no response.

18. On August 26, 2024, Plaintiff formally terminated the contract with ATH due to:
    - Failure to complete work within the 180-day deadline (by August 25, 2024)
    - Untimely permit acquisition
    - Lack of communication
    - The unauthorized withdrawals totaling $315,700

19. ATH ceased business operations in August 2024, leaving Plaintiff and hundreds of other customers, subcontractors, and franchisees unpaid.

20. On October 8, 2024, the CSLB formally revoked ATH's contractor license and imposed a five-year industry bar, finding that ATH had committed multiple violations of the Contractors State License Law, including:
    - Abandonment (Business and Professions Code Section 7107)
    - Departure from trade standards (Section 7109)
    - Contract violations (Section 7159)
    - Accepting payment for undelivered materials (Section 7159.5)

21. On October 11, 2024, Defendant filed for Chapter 7 bankruptcy in this Court (Case No. 24-24588).

22. On November 15, 2024, the California Department of Financial Protection and Innovation issued a Stop Order (Case No. 31031), revoking ATH's franchise registration due to multiple violations of the Franchise Investment Law.

23. ATH and its principals, including Defendant, are currently under investigation by the FBI and the Department of Justice regarding their business operations and financial transactions.

## ADDITIONAL FACTUAL ALLEGATIONS

24. The California Contractors State License Board served ATH with a formal accusation in September 2024 (Case No. N2024-140), including allegations of taking excessive down payments and abandoning projects. ATH failed to respond to these allegations, which contributed to the revocation of their license effective November 8, 2024.

25. Former ATH Chief Operating Officer Chris Pace has publicly stated that he left the company due to concerns over its business practices. Mr. Pace has alleged that Defendant and his family members often used the company's subcontractors for personal projects when they were supposed to be building tiny homes and ADUs for customers.

26. Mr. Pace has further alleged that ATH engaged in illegal practices, including requesting that families pay for services and materials before plans for construction were even started.

27. Court records from Austin Paulhus's bankruptcy filing (Case No. 24-24383) reveal that ATH owes more than $12.8 million to creditors while having only approximately $1.2 million in assets.

28. The bankruptcy filing lists nearly 90 pages of customers affected by ATH's business practices, spanning from the Bay Area to the greater Sacramento region.

29. A Facebook group titled "Scammed by Anchored Tiny Homes" has documented more than 60 customers, subcontractors, and franchisees who have lost a combined $5.5 million due to ATH's business practices.

30. The former COO of ATH has stated that when the company shut down, it left approximately 450 customers stranded with unfinished projects.

31. The Better Business Bureau of Sacramento has revoked ATH's accreditation following an influx of complaints from customers regarding financial losses and incomplete work.

32. California law prohibits contractors from asking for a down payment of more than 10 percent of the contract price on a home improvement project or $1,000, whichever is less. ATH routinely violated this requirement by demanding excessive upfront payments.

33. Defendant Paulhus has publicly described himself as an entrepreneur with the goal of becoming a billionaire, despite having a documented history of six failed businesses prior to ATH.

34. Defendant Paulhus has moved to the State of Washington in an apparent attempt to avoid the consequences of his actions in California.

35. On April 15, 2025, the Chapter 7 Trustee filed a stipulation to extend the deadline to object to discharge (Doc. 133), noting receipt of information suggesting that "the Debtor and other principals of Anchored Tiny Homes, Inc., and various affiliated entities engaged in wrongdoing by way of their management." The Trustee is actively investigating potential breach of fiduciary duty claims.

36. On April 16, 2025, the Trustee filed an Application for Authority to Issue FRBP 2004 Discovery (Doc. 137), seeking access to ATH's business records maintained on cloud-based servers. The Debtor has testified that ATH and its principals "lost access" to these records due to nonpayment of license fees, which Plaintiff contends represents a deliberate attempt to conceal evidence of wrongdoing.

## COUNT I - NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

## (Debt Obtained by False Pretenses, False Representations, or Actual Fraud)

37. Plaintiff incorporates by reference paragraphs 1 through 36 as if fully set forth herein.
38. Defendant, through ATH, knowingly and intentionally made false representations to Plaintiff regarding the services to be provided in exchange for payment.
39. These representations included, but were not limited to: a. That ATH would provide legitimate construction services for the payments received; b. That the ACH withdrawals were authorized and properly documented; and c. That ATH was a legitimate business operating in compliance with applicable laws and regulations.
40. Defendant knew these representations were false when made, as evidenced by: a. The immediate cessation of all communication after receiving payment; b. The pattern of similar conduct with numerous other customers (approximately 450 by the former COO's account); c. The systematic unauthorized withdrawals from multiple customers on or around the same time period; d. The regulatory actions taken against ATH and its principals, including license revocation and franchise registration revocation; e. The testimony of former ATH executives regarding improper business practices; and f. The history of six prior failed businesses operated by Defendant.
41. Defendant made these representations with the intent to deceive Plaintiff and induce Plaintiff to part with funds.
42. Plaintiff reasonably relied on Defendant's representations when allowing ATH to initiate transactions from his account, particularly given his status as a disabled veteran with cognitive impairments.
43. As a direct and proximate result of Defendant's false representations, Plaintiff suffered damages in the amount of $315,700 in direct damages.
44. The U.S. Supreme Court has held that "§523(a)(2)(A) encompasses common-law fraud" encompassing "false pretenses, a false representation, or actual fraud." Husky Int'l Electronics, Inc. v. Ritz, 578 U.S. 356, 359 (2016).
45. As the Fifth Circuit has established in Matter of Acosta, 406 F.3d 367, 372 (5th Cir. 2005), to prevail under §523(a)(2)(A), a creditor must prove: (1) that the debtor made representations; (2) that the debtor knew were false at the time they were made; (3) that the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such

representations; and (5) that the creditor sustained losses as a proximate result of the representations.

46. Plaintiff has established each of these five elements. The facts of this case are not merely a breach of contract but instead constitute the intentional tort of fraud, as Defendant systematically and purposefully misrepresented material facts with the specific intent to defraud Plaintiff.

47. The debt owed to Plaintiff was obtained by false pretenses, false representations, and/or actual fraud, and is therefore non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

48. Plaintiff specifically requests that this Court make an explicit finding that the debt was obtained through "fraud" as defined in California Corporations Code Sections 2280-2296 to enable Plaintiff to pursue restitution from the Victims of Corporate Fraud Compensation Fund if collection from Defendant proves impossible.

## COUNT II - NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

## (Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny)

49. Plaintiff incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

50. By accepting payment from Plaintiff for specific construction services, Defendant assumed a fiduciary duty to use those funds for the intended purpose of providing the contracted services.

51. Contractor license laws in California create a fiduciary relationship between a contractor and a customer with respect to funds received for construction services.

52. California law, specifically Business and Professions Code § 7108, makes it a violation for a contractor to divert funds or property received for the completion of a specific construction project or operation, establishing a fiduciary relationship.

53. California Business and Professions Code § 7108 expressly states: "Diversion of funds or property received for prosecution or completion of a specific construction project or operation, or for a specified purpose in the prosecution or completion of any construction project or operation, or failure substantially to account for the application or use of such funds or property on the construction project or operation for which such funds or property were received constitutes a cause for disciplinary action."

54. The unauthorized ACH transactions initiated by Defendant through ATH were executed with fraudulent intent to misappropriate Plaintiff's funds, constituting embezzlement or larceny.

55. The scale of ATH's failure to perform services after receiving payment from hundreds of customers (approximately 450 according to the former COO) demonstrates a systematic pattern of misappropriation of funds.

56. Defendant's actions in receiving funds and then failing to perform the promised services constitute fraud or defalcation while acting in a fiduciary capacity.

57. The allegations by former ATH executives that company funds were diverted for personal use, including funding Defendant's podcast and personal construction projects, further substantiate claims of embezzlement or defalcation in a fiduciary capacity.

58. The Ninth Circuit has defined embezzlement for purposes of § 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." In re Littleton, 942 F.2d 551, 555 (9th Cir. 1991). Defendant's appropriation of Plaintiff's funds fits this definition precisely.

59. The Trustee's current investigation into potential breach of fiduciary duty claims, as evidenced by recent court filings (Docs. 133 and 137), further supports the existence of a fiduciary relationship and potential breach thereof.

60. The debt owed to Plaintiff resulted from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is therefore non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT III - NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6)

## (Debt for Willful and Malicious Injury)

61. Plaintiff incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

62. Defendant's actions in initiating unauthorized ACH transactions from Plaintiff's bank account were willful, as they were deliberate and intentional acts done with knowledge that the withdrawals were not authorized.

63. Defendant's actions were malicious, as they were done with the specific intent to cause financial harm to Plaintiff or, at minimum, with the knowledge that harm was substantially certain to occur.

64. The timing, amount, and method of the withdrawals—three separate transactions totaling $315,700 on a single day—indicate a deliberate attempt to circumvent banking safeguards and demonstrate the willful and malicious nature of Defendant's conduct.

65. Defendant's willful and malicious conduct is further evidenced by: a. The pattern of similar actions against multiple victims across Northern California; b. The immediate cessation of all communication after receiving payment; c. The creation of new business entities as ATH was imploding, suggesting an intent to continue deceptive practices; d. The findings of regulatory agencies regarding willful violations of law; e. The magnitude of financial harm caused to hundreds of customers; f. The systematic violation of California contractor laws regarding maximum allowable down payments; and g. Defendant's relocation to Washington State in an apparent attempt to avoid creditors and legal consequences.

66. The United States Supreme Court in Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998), established that § 523(a)(6) requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Defendant's actions were deliberate and intentionally designed to cause injury to Plaintiff by depriving him of his funds without providing any services in return.

67. The Ninth Circuit in In re Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001), has defined an injury as "malicious" under § 523(a)(6) when it is "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Defendant's conduct meets all four elements of this test.

68. The apparent loss of access to business records maintained on cloud-based servers due to nonpayment of license fees, as noted in the Trustee's recent filing (Doc. 137), suggests a deliberate attempt to conceal evidence of wrongdoing.

69. As a direct and proximate result of Defendant's willful and malicious conduct, Plaintiff suffered financial injury in the amount of $315,700.

70. The debt owed to Plaintiff resulted from willful and malicious injury by Defendant to Plaintiff and his property, and is therefore non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MAJ Steven Sonza (RET) respectfully requests that this Court:

1. Determine that the debt owed by Defendant to Plaintiff in the amount of $315,700 in direct damages is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and/or (6);

2. Make explicit findings that the debt was incurred through fraud, misrepresentation, or deceit with intent to defraud within the meaning of California Corporations Code sections 2280-2296;

3. Explicitly find that Defendant acted in a fiduciary capacity pursuant to California Business and Professions Code § 7108 and committed fraud or defalcation while acting in that capacity;

4. Explicitly find that Defendant's conduct was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6) and relevant case law, including Kawaauhau v. Geiger, 523 U.S. 57 (1998);

5. Acknowledge in the judgment that recovery of this judgment amount is highly unlikely due to Defendant's financial circumstances, including the lack of assets to satisfy the claims of approximately 450 creditors with total claims exceeding $12.8 million, and that this judgment may serve as the basis for an application to the California Victims of Corporate Fraud Compensation Fund;

6. Find that Defendant operated ATH as a corporate entity engaged in interstate commerce through its franchise operations across multiple states, thus satisfying the corporate entity requirement of the California Victims of Corporate Fraud Compensation Fund;

7. Enter judgment in favor of Plaintiff and against Defendant in the amount of $315,700, plus pre-judgment and post-judgment interest as allowed by law;

8. Award Plaintiff his costs of suit incurred herein;
9. Grant Plaintiff reasonable accommodations pursuant to the Americans with Disabilities Act and related laws based on Plaintiff's service-connected disabilities; and
10. Grant such other and further relief as this Court deems just and proper.

Dated: May 2, 2025

Respectfully submitted,

MAJ Steven Sonza (RET)

7200 Roxanne Ln

Rohnert Park, CA 94928

(707) 479-9978

[steviesonz@gmail.com](steviesonz@gmail.com)

Pro Se Plaintiff

## EXHIBIT LIST

**EXHIBIT A**: Letter from San Francisco VA Medical Center (March 12, 2025)
This letter from Dr. Jacqueline Caffrey confirms my service-connected disabilities (PTSD, Major Depressive Disorder, Agoraphobia with Panic Disorder) with a 100% VA disability rating. It states that these conditions limit major life activities like cognition, concentration, emotional regulation, and social interaction, impairing my ability to participate in formal proceedings.

**EXHIBIT B**: Signed Contract with Anchored Tiny Homes (December 18, 2023)
Renovation Contract for construction of a 1000 sq. ft. custom ADU at 7200 Roxanne Ln, Rohnert Park, CA 94928, for $336,700. Key contract terms include:

- Work to begin within 30 days of loan closing and be completed within 180 days from loan closing (by August 25, 2024).

- Contractor responsible for all labor, materials, permits, and compliance with laws.
- Time is explicitly stated as "of the essence," with strict deadlines (180-day completion).

**EXHIBIT C**: Additional Contract Documents

Contract details including:

- Contingency funds specifications, limiting use to approved scope.
- ATH's company details and construction experience claiming 5 years in business.
- Permit certification signed by ATH on December 29, 2023, promising timely permit acquisition.
- Customer and trade references.

**EXHIBIT D**: Invoices from Anchored Tiny Homes

- Invoice 3382 (February 7, 2024): $41,087.50 for "Design Deposit & Approved Floor Plan."
- Invoice 3419 (February 13, 2024): $3,060.00 for "Permit Fees Reimbursement - Boundary Survey."
- Invoice 3650 (March 6, 2024): $42,087.50 for "Design Deposit and Approved Floor Plan" (potential duplicate billing).
- Invoice 3795 (March 19, 2024): $285,195.00 for "Full Contract Amount," marked as PAID IN FULL.

**EXHIBIT E**: Redwood Credit Union (RCU) Electronic (ACH) Claim Summary (August 2, 2024)

Documents my claim against ATH for unauthorized ACH withdrawals totaling $221,275.65 from my account on March 21, 2024, including:

- Two $100,000 payments and one $21,275.65 payment to ATH.
- My attestation that these debits were unauthorized.
- RCU's investigation notes and claim processing details.

**EXHIBIT F**: Draw Request Form (March 6, 2024)

Request for $56,284.66 covering 24 line items, including footings, foundation, plumbing, framing, electrical, roofing, and design. This document contains demonstrably fraudulent pricing, including:

- Painting priced at $163.97 (market rate: $2,000-$5,000).
- Kitchen cabinets and countertops priced at $612.50 (market rate: $10,000-$20,000).
- Flooring and tile priced at $376.25 (market rate: $2,500-$7,500).
- Bathroom fixtures priced at $556.50 (market rate: $5,000-$10,000).

**EXHIBIT G**: "PAID IN FULL" Invoice (March 19, 2024)

Invoice 3795 for $285,195.00 for "Full Contract Amount," marked as PAID IN FULL despite only

preliminary design work having been completed. This invoice was issued early in the project timeframe before any substantive construction began.

**EXHIBIT H**: Notice of Contract Termination and Demand for Refund (August 26, 2024)

My formal termination letter to Colton Paulhus (ATH) due to:

- Failure to complete work within 180 days (by August 25, 2024).
- Untimely permit acquisition.
- Lack of communication.
- Documentation of my $315,700 payment.
- Calculation of $50,505.00 as due for services rendered (deposit, floor plan, permit submittal).
- Demand for a refund of $271,195.00.

**EXHIBIT I**: Contractors State License Board (CSLB) Records (March 14, 2025)

Source: CSLB, 9821 Business Park Drive, Sacramento, CA 95827.

Content: Records responsive to my Public Records Act request, including:

- Advisory Notice (September 21, 2023, Complaint No. NA-2022-15117)
- Formal Accusation (Case No. N2024-140, filed September 12, 2024)
- Default Decision (effective November 8, 2024)
    - Issued after ATH's failure to respond to the Accusation
    - Confirmed all allegations by "clear and convincing evidence"
    - Ordered license revocation and five-year ban on reinstatement
    - Imposed $4,546.25 in investigation costs