# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| In re: | Case No. 24-24588 |
|---|---|
| COLTON PAULHUS, | Chapter 7 |
| Debtor. | |
| ------------------------------- | |
| STEVEN SONZA, | Adv. Proc. No. _____ |
| Plaintiff, | |
| v. | MEMORANDUM OF POINTS AND |
| AUTHORITIES IN SUPPORT OF | |
| COLTON PAULHUS, | COMPLAINT TO DETERMINE |
| Defendant. | DISCHARGEABILITY OF DEBT |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

## I. INTRODUCTION

Plaintiff MAJ Steven Sonza (RET), a 100% service-connected disabled veteran with documented cognitive impairments, brings this adversary proceeding to determine that the $315,700 debt owed by Defendant Colton Paulhus is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4), and (6). This debt arose from a systematic scheme of fraud perpetrated by Defendant through his company, Anchored Tiny Homes LLC ("ATH"), which specifically targeted vulnerable individuals, including disabled veterans.

## II. STATEMENT OF FACTS

### A. Plaintiff's Vulnerable Status

Plaintiff is a 100% service-connected disabled veteran with documented Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder, and Agoraphobia with Panic Disorder. (See Exhibit A: VA Medical

Center Letter). These conditions significantly impair Plaintiff's cognitive functions, memory, and ability to process complex information. The Department of Veterans Affairs has determined that Plaintiff has "total occupational and social impairment" with symptoms including "memory impairment" and "near-continuous panic."

## B. The Contract and Fraudulent Scheme

On December 18, 2023, Plaintiff entered into a contract with ATH for construction of a 1000 sq. ft. custom Accessory Dwelling Unit (ADU) at Plaintiff's property in Rohnert Park, California, for $336,700. (See Exhibit B: Signed Contract). Key terms included:

1. Work to begin within 30 days of loan closing and be completed within 180 days
2. Contractor responsible for all labor, materials, permits, and compliance with laws
3. Payments to be phased based on work completion

In March 2024, ATH engaged in a systematic scheme to defraud Plaintiff by:

1. Sending conflicting invoices with different amounts for the same services
   - Invoice 3382 ($41,087.50) and Invoice 3650 ($42,087.50) for "Design Deposit & Approved Floor Plan" (Exhibit D)
   - Invoice 3795 ($285,195.00) marked as "PAID IN FULL" for "Full Contract Amount" despite minimal work performed (Exhibit G)
2. Creating a fraudulent Draw Request form with demonstrably false pricing (Exhibit F):
   - Painting priced at $163.97 (market rate: $2,000-$5,000)
   - Kitchen cabinets priced at $612.50 (market rate: $10,000-$20,000)
   - Bathroom fixtures priced at $556.50 (market rate: $5,000-$10,000)
3. Initiating unauthorized ACH withdrawals totaling $221,275.65 on March 21, 2024, deliberately structured as three separate transactions ($100,000, $100,000, $21,275.65) to circumvent banking safeguards (Exhibit E)
4. Abandoning the project after receiving $315,700, with only approximately $50,505 worth of actual work performed

## C. Official Government Findings of Wrongdoing

The California Contractors State License Board (CSLB) conducted a formal investigation and issued a Default Decision in Case No. N2024-140 (Exhibit I), finding by "clear and convincing evidence" that ATH and its principals, including Defendant Colton Paulhus:

1. Abandoned projects without legal excuse (B&P Code § 7107)

2. Departed from accepted trade standards (B&P Code § 7109)

3. Violated multiple contract requirements (B&P Code § 7159)

4. Accepted payment for materials before delivery (B&P Code § 7159.5)

Critically, the CSLB explicitly found that "Colton Scott Paulhus had knowledge of or participated in the prohibited act(s) or omission(s)" that warranted the disciplinary action. ATH's contractor license was revoked effective November 8, 2024, with a five-year industry ban.

### D. Pattern of Widespread Fraud

Evidence shows this was not an isolated incident but part of a systematic scheme affecting approximately 450 customers across Northern California, with combined losses exceeding $12.8 million. Former ATH executives have confirmed the company's fraudulent business practices, including requesting payment before services were rendered and diverting funds.

## III. LEGAL ARGUMENT

### A. The Debt is Non-Dischargeable Under 11 U.S.C. § 523(a)(2)(A) - False Pretenses, False Representations, or Actual Fraud

To establish non-dischargeability under § 523(a)(2)(A), the creditor must prove: (1) the debtor made representations; (2) that the debtor knew were false at the time they were made; (3) that the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations. In re Acosta, 406 F.3d 367, 372 (5th Cir. 2005).

Each element is clearly established in this case:

1. **Representations**: Defendant, through ATH, represented that:
    - Funds would be used for specific construction services
    - ACH withdrawals were authorized
    - Work would be performed according to contract terms

2. **Knowledge of Falsity**: Defendant knew these representations were false, as evidenced by:
    - The immediate cessation of work after receiving payment
    - Conflicting invoices showing deliberate manipulation
    - Fraudulent Draw Request with impossibly low pricing
    - CSLB's finding that Defendant personally "had knowledge of or participated in" the prohibited acts

3. **Intent to Deceive**: Defendant's intent is established by:

- Strategic timing of Invoice 3795 immediately before unauthorized withdrawals
- Deliberate structuring of withdrawals into three separate transactions
- Pattern of similar conduct with hundreds of other customers
- CSLB's findings of abandonment and accepting payment for undelivered materials

4. **Reliance**: Plaintiff reasonably relied on Defendant's representations due to:
   - His vulnerable status as a disabled veteran with cognitive impairments
   - The legitimate appearance of the business with proper licensing
   - The presumption that contractors will follow California's strict licensing laws

5. **Proximate Loss**: Plaintiff suffered direct damages of $315,700, with only approximately $50,505 worth of services actually rendered.

The U.S. Supreme Court has clarified that § 523(a)(2)(A) encompasses "actual fraud" that can include "fraudulent conveyance schemes, even when those schemes do not involve a false representation." Husky Int'l Electronics, Inc. v. Ritz, 578 U.S. 356, 357 (2016). The unauthorized ACH withdrawals and pattern of conduct demonstrate actual fraud beyond mere misrepresentation.

## B. The Debt is Non-Dischargeable Under 11 U.S.C. § 523(a)(4) - Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny

Section 523(a)(4) applies when a debt arises from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." California law creates a fiduciary relationship between contractors and clients regarding construction funds.

California Business & Professions Code § 7108 explicitly states: "Diversion of funds or property received for prosecution or completion of a specific construction project or operation, or for a specified purpose in the prosecution or completion of any construction project or operation... constitutes a cause for disciplinary action."

The Ninth Circuit defines embezzlement for purposes of § 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." In re Littleton, 942 F.2d 551, 555 (9th Cir. 1991). Defendant's actions fit this definition precisely:

1. Defendant accepted $315,700 for specific construction purposes
2. These funds were lawfully entrusted to him for the ADU project
3. Defendant fraudulently appropriated these funds without performing the agreed services
4. CSLB formally found that Defendant violated B&P Code § 7159.5 by "accepting payment for materials before delivery"

The evidence establishes non-dischargeability under § 523(a)(4).

## C. The Debt is Non-Dischargeable Under 11 U.S.C. § 523(a)(6) - Willful and Malicious Injury

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998), the Supreme Court clarified that this requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

The Ninth Circuit in In re Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001), defined an injury as "malicious" when it is "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse."

The evidence demonstrates both willful and malicious conduct:

1. Defendant's initiation of unauthorized ACH withdrawals was deliberate and intentional
2. The timing and structuring of the withdrawals (three separate transactions on one day) shows calculated circumvention of banking safeguards
3. Defendant knew that withdrawing $221,275.65 without performing the contracted work would necessarily cause financial harm to Plaintiff
4. The CSLB's finding that Defendant personally participated in the violations provides direct evidence of willfulness
5. Targeting a disabled veteran with documented cognitive impairments demonstrates particular malice

Accordingly, the debt is non-dischargeable under § 523(a)(6).

## D. Explicit Findings of Fraud Required for California Victims of Corporate Fraud Compensation Fund

Plaintiff specifically requests that this Court make explicit findings that the debt was obtained through "fraud" as defined in California Corporations Code §§ 2280-2296. Such findings would enable Plaintiff and potentially hundreds of other victims to pursue restitution from the California Victims of Corporate Fraud Compensation Fund if collection directly from Defendant proves impossible.

The Fund was established to compensate victims of corporate fraud when recovery from the perpetrator is unlikely. Given the approximately 450 victims with claims exceeding $12.8 million against ATH's limited assets (approximately $1.2 million per bankruptcy filings), an explicit finding of fraud would serve the public interest by providing an alternative avenue for compensation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court determine the $315,700 debt owed by Defendant to be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4), and (6), and make explicit findings of fraud under California Corporations Code §§ 2280-2296.

Dated: May 2, 2025

Respectfully submitted,

MAJ Steven Sonza (RET)

7200 Roxanne Ln

Rohnert Park, CA 94928

(707) 479-9978

[steviesonz@gmail.com](steviesonz@gmail.com)

Pro Se Plaintiff