**4**

Law Offices of Peter G. Macaluso
Peter G. Macaluso #215730
7230 South Land Park Drive #127
Sacramento, CA 95831
916-392-6591
916-392-6590 Facsimile

Attorney for Defendant
Attorney for Defendant
Colton S. Paulhus

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO

| | |
|---|---|
| IN THE MATTER OF | CASE NO. 24-24588-B-7 |
| COLTON S. PAULHUS | ADV. NO. 25-02058 |
| _____Debtor._____ / | DCN NO: PGM-1 |
| STEVEN SONZA | DATE: September 9, 2025<br>TIME: 11:00 a.m. |
| Plaintiff, | DEPT#: B - Courtroom 32<br>Honorable Judge Jaime |
| COLTON S. PAULHUS | |
| _____Defendant_____ / | |

**DECLARATION OF COLTON PAULHUS IN SUPPORT OF
MOTION TO SET ASIDE DEFAULT**

I, Colton Paulhus, Defendant in the above instant action do hereby declare as follows:

1. When I filed for bankruptcy protection, I was confident that my bankruptcy counsel would assist me to the end of the case.

2. I filed for bankruptcy protection because my world was crashing down upon me and my family; both financially and personally.

3. My family and I were receiving death threats due to the failure of my family

-1-

business, Anchor Tiny Homes, a Limited Liability Company ("ATH") and we were forced to flee the state.

4. I filed bankruptcy on October 11, 2024, under Chapter 7.

5. My brother had also filed bankruptcy on September 30, 2024, under Chapter 7.

6. As soon as we filed, many motions were filed, and the trustee hired an attorney who sent us a lot of paperwork to give to him.

7. By November, the attorney's for my car and house were filing motions to have us surrender them.

8. Next, the creditors came in to get the time to file these objections to discharge, which were granted.

9. In January of 2025, Creditor, Zanzucchi, filed a adversary proceeding.

10. I tried to discuss this case with my bankruptcy counsel, but he stated he was retiring and told me from the beginning that he did not do adversary cases.

11. However, when he told me this at our initial consult, I didn't really understand the distinction of an adversary case and any other procedure inside of my bankruptcy case.

12. He also had told me I shouldn't worry because only 1% of bankruptcy cases have adversary cases filed against them.

13. My attorney suggested that I could handle as a pro per plaintiff.

14. I then answered the complaint, which I assumed would be sufficient relying on my counsel to advise me if I did something wrong.

15. I believed that my bankruptcy attorney, aware of my case, would be advising and guiding me through the process of trying to handle the cases in pro per.

16. However, then ATH also filed a class action adversary proceeding which I got confused about, and did not realize that these were two different cases, and that my answer would not be recognized in the second case.

17. I never answered the 2nd case with ATHF because I did not realize that I needed to

file another answer.

18. Then, on May 12, 2025, I received more paperwork from Plaintiff, Sonza ("Sonza") and did not realize that this was a 3rd case, and that this required a separate answer as well.

19. Once I realized that there was a Default Judgment granted and learned that this means the debts are non-dischargeable, I was confused as to why my attorney let it happen because I expected him to file the proper paperwork.

20. At all times, I believed my attorney would let me know if I needed to do something or had done something wrong in my case.

21. I met with several attorneys; whom told me they were too busy, that a retainer would be $85,000.00, and that I should have been prepared before filing the chapter 7 that an adversary was very possible.

22. Had I known what I know now, I would have been prepared from the start to defend myself in this litigation.

23. As to this Sonza case, I have a solid defense.

24. Sonza is claiming that ATH took funds from his account, but this is untrue.

25. The software, Quickbooks that ATH uses is unable to withdraw funds and can only send out invoices and received payments that customers choose to pay. (Exhibit 3; Case No. 25-02058 - Dckt. #10)

26. Sonza was the first customer that requested a discount if he paid in full and he did so by his own actions.

27. Sonza accuses ATH of fraud and misrepresentation, but there is none.

28. At the time of contracting with Sonza in December, 2023, ATH had a proven track record of success and was rapidly growing with a product in high demand.

29. That same month, ATH received a $5 million dollar SBA loan to go towards growth and expansion.

30. Simultaneously, ATH engaged BMO, a professional investment bank, Raintree and

|   |     |                                                                                                                                                                                     |
|---|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   |     | Franchise Fastlane, Inc. to secure outside investments and/or acquisition offers via private equity investments.                                                                    |
|   | 31. | Based on Franchise Fastlane's direct guidance, ATHF continued hiring, marketing, and sales, believing that growth would secure a pending equity deal. (Exhibit #5 - www.franchisefastlane.com) |
|   | 32. | At the same time, performances on existing contracts were underway.                                                                                                                 |
|   | 33. | Sonza was engaged in meeting with our design manager and the team to design his custom ADU.                                                                                         |
|   | 34. | Sonza's permitting package was in process and awaiting the design approval and completion.                                                                                          |
|   | 35. | ATH, LLC is a limited liability company that contracted with Sonza to build an ADU. (See Exhibit #3 - State of California - Articles of Organization)                               |
|   | 36. | At no time were there any fraudulent intention or misrepresentations made to Sonza.                                                                                                 |
|   | 37. | At all times, ATH intended to complete the ADU project for Sonza.                                                                                                                   |
|   | 38. | At all times, I, along with many others, were working to grow and expand our already successful business.                                                                           |

I declare under penalty of perjury that the foregoing statement is true and correct. This declaration is executed on August 10, 2025 at Sacramento, California.

                                                              /s/Colton Paulhus

                                                              Colton Paulhus, Defendant